481 So.2d 113 (1985)
In the Matter of ROLLINS ENVIRONMENTAL SERVICES, INC.
No. 85-CC-2050.
Supreme Court of Louisiana.
December 31, 1985.
*114 William C. Broadhurst, Emile C. Rolfs, III, Baton Rouge, for Rollins Environmental Services, Inc.
William J. Guste, Jr., Atty. Gen., John B. Sheppard, Jr., Asst. Atty. Gen., Baton Rouge, for respondent.
CALOGERO, Justice.
On August 6, 1985, Rollins Environmental Services, Inc., operator of a hazardous waste disposal facility north of Baton Rouge, was issued a compliance order from the Secretary of the Department of Environmental Quality which foretold the termination of the receipt and/or disposal of hazardous waste at their plant within seven months.[1] Rollins responded by requesting a hearing in accordance with the provisions of La.Rev.Stat.Ann. § 30:1072(A),[2] and thereafter by moving to recuse Patricia Norton, secretary of DEQ, from any participation in the hearing. Although a hearing officer has been designated by the Secretary to take evidence and make findings of fact in this matter,[3] the Secretary has the right to review any decision by the hearing officer on the application of a party, and she has specifically reserved to herself the determination of any penalty assessment. Alleging that the Secretary has prejudged the facts of their case, Rollins demands her withdrawal in the interest of assuring due process of law, and fundamental fairness.
When the Secretary refused to recuse herself, Rollins sought a writ in the First Circuit Court of Appeal.[4] The Court of Appeal denied writs finding insufficient grounds for recusing the Secretary, and determining that any prejudice which Rollins might suffer at the administrative *115 hearing can be adequately remedied on appeal.
This Court thereafter granted a writ of review upon the application of Rollins to determine whether Rollins is legally entitled to have the Secretary recused from all further participation in pending adjudication proceedings involving Rollins.
Facts
The enforcement action taken by the Department of Environmental Quality under the provisions of the Environmental Quality Act, La.Rev.Stat.Ann. § 30:1051 et seq., was prompted by a complaint from the community concerning noxious odors emanating from the Rollins plant on the evening of August 5, 1985.[5] In response to the complaint, Secretary Norton and several members of the DEQ staff proceeded to the site in order to investigate the incident.[6] The Compliance Order, which succeeded this investigation, asserted that there were found at the disposal facility, violations of the Louisiana Air Quality Regulations, including black smoke emissions and malfunctioning equipment in the incinerator control room. Disorganization and confusion in the control room were also cited. Based on these conditions, within twenty minutes of her arrival at the plant, Secretary Norton ordered an immediate shut down of the incinerator.[7] According to the Compliance Order, it was also determined that strong odors emanated from the equalization basin, the landfill area and the truck washout pit. The Compliance Order noted that similar odors had been reported intermittently since 1979 and that at least eight compliance orders had been issued to the facility since 1980.
After the August 5 inspection of the plant, in particular inspection of the incinerator, and following issuance of the Compliance Order, Secretary Norton made repeated public statements regarding her resolve to close Rollins' entire facility permanently. On the very day that the Compliance Order was issued, Norton was quoted in the Baton Rouge State Times as saying:
I intend to use every legal means at my disposal to close this facility and keep it closed.
On August 9, the Wall Street Journal quoted the Secretary as saying that
even if the company came in tomorrow and said it would turn the site into a state-of-the-art facility that could be run perfectly in compliance, I wouldn't give them any more time.
These statements and other similar ones[8] led Rollins to believe that Secretary Norton *116 had already decided that violations existed and that the appropriate penalty would be the termination of their permit to do business in Louisiana. Thus, they were upset when they learned what her role was to be in regard to their forthcoming hearing. She was to review the findings of the hearing officer and she alone was to determine what, if any, penalty should be assessed.
On September 27, Norton named as a hearing officer in the Rollins matter one Aub A. Ward, a Baton Rouge attorney. At the time of the appointment she authorized him to make findings of fact, conclusions of law and recommendations (with the support of documentation), as to what violations, if any, existed and what action, if any, should be taken. In correspondence to Ward on October 24, however, Norton modified the initial statement of authority by asserting that "you are neither to consider, nor to make any recommendations concerning, possible sanctions." In fact, Norton herself intended to "make the final decision as to whether a penalty is to be imposed on Rollins, and if so, what the nature of that penalty shall be," as she made clear in a letter to the attorney for Rollins on October 14 (regarding her decision not to recuse herself).
Department of Environmental Quality, La.Rev.Stat.Ann. § 30:1051 et seq.
The Department of Environmental Quality was created as "the primary agency in the state concerned with environmental protection and regulation," and was given specific jurisdiction to regulate air quality, noise pollution, water pollution, solid waste disposal, radiation, hazardous waste management, and the protection and preservation of the state's scenic rivers and streams. La.Rev.Stat.Ann. § 30:1061 A(1). To head the department, composed of three distinct offices,[9] a secretary is appointed by the governor with the consent of the Senate. La.Rev.Stat.Ann. § 30:1061 B, C(1). Each of the three offices is under the immediate supervision and direction of an assistant secretary who is also appointed by the governor with the consent of the Senate. § 30:1061 C(2). Among the secretary's powers and duties, enumerated in § 30:1061 D, are the ability to grant or deny operating permits; to delegate that power to assistant secretaries; to hold hearings or meetings on her own motion or upon complaint, for the purpose of factfinding, etc.; to issue orders or determinations as necessary to effectuate the purpose of the Environmental Quality Act (Chapter 11 of Title 30), including cease and desist orders as provided in § 30:1073; to inspect, investigate, and enter facilities; to assign certain duties to administrative law judges; and "[t]o exercise all incidental powers necessary or proper to carry out the purposes of this Chapter." § 30:1061 D(2), (3), (5), (6), (13), (17), and (14).
These powers and duties are elaborated in subsequent sections of the chapter, and appropriate procedures are set forth. The enforcement provision is § 30:1073. It permits *117 the secretary, an assistant secretary, or an authorized technical secretary to issue an emergency cease and desist order should it be determined that a violation of the Chapter which endangers or damages the public health or environment is occurring or is about to occur.[10] § 30:1073 C(1). Although this section provides that the order remains in effect until a hearing may be held, the law contemplates a hearing within fifteen days, since the emergency order may remain in force no longer than that. To meet the requirements of the Revised Statutes, the compliance order must contain a statement of the nature of the violation, a time limit for compliance, and the possibility of assessment of a civil penalty if compliance is not forthcoming. § 30:1073 D. The penalties for a violation of this chapter may be assessed by the secretary or the assistant secretary of the Department of Environmental Quality, or the court,[11] and may include a fine[12] and the revocation or suspension of any permit. § 30:1073 E(1). Any penalty assessment must be preceded by both notice and an opportunity for a hearing on the charge. § 30:1073 E(4).
The hearing envisioned by these sections of the Revised Statutes may be before the secretary.[13] However, § 30:1066.1 provides for the selection of administrative law judges by the governor who are empowered to collect evidence, conduct hearings, issue orders, and render decisions with respect to matters assigned to them (apparently by the secretary). A decision of an administrative law judge is subject to review by the secretary should the party request it within thirty days. The secretary may deny the motion, at which time the order or decision shall become final. If the secretary chooses to grant the party's motion for review, § 30:1066.1 D authorizes her to remand the matter with instructions to the administrative law judge, to overrule the decision or order of the administrative law judge and to render a contrary decision or order based on the record, or to hold new hearings, collect additional evidence or both, and to render her own decision, or issue her own order. Apparently the absence of available state funds has prevented the employment of an administrative law judge as permitted in the Revised Statutes. As a consequence, the secretary has appointed hearing officers, who perform similar functions, undoubtedly with at least the same statutory limitations on their authority as are imposed on administrative law judges (see footnote 3).
After the secretary's review, § 30:1072 C provides that an aggrieved party's further recourse is by appeal to the Court of Appeal, First Circuit. By that statute the Court of Appeal, First Circuit is authorized to hear an appeal of a final decision or order, and may exercise its supervisory jurisdiction over a preliminary, procedural, or intermediate ruling or decision by the secretary.[14]
Administrative Procedure Act: Recusal
The Louisiana Administrative Procedure Act, an adaptation of the 1961 Model State *118 Administrative Procedure Act, was enacted to provide a comprehensive and uniform system to apply to all agencies not specifically excepted. Dakin, The Revised Model State Administrative Procedure Act-Critique and Commentary, 25 La.L.Rev. 799, 800 (1965). The original act, 1966 La.Acts No. 382, excepted a number of agencies, apparently with no discernible pattern or scheme. Among the state boards, commissions, or departments excepted were the Department of Conservation and the State Mineral Board. 1966 La.Acts. No. 382, § 1 (2). A 1974 amendment, however, redefined "agency" to bring those agencies originally excepted within the scope of the Administrative Procedure Act.[15] Comment, Louisiana's "New" Administrative Procedure Act, 35 La.L.Rev. 629, 633-34 (1975). As defined in La.Rev.Stat. § 49:951(2), after its most recent amendment, 1979 La.Acts. No. 578, § 1,
(2) "Agency" means each state board, commission, department, agency, officer, or other entity which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana, except the legislature or any branch, committee, or officer thereof, any political subdivision, as defined in Article VI, Section 44 of the Louisiana Constitution, and any board, commission, department, agency, officer, or other entity therof, and the courts.
It is clear then that all Louisiana governmental entities which promulgate rules or make decisions under the Louisiana Constitution and statutes, are subject to the Administrative Procedure Act unless they are part of the Legislature or the judiciary, or are political subdivisions or entities thereof, or unless they are expressly exempt from such application by statute. Furthermore, the general applicability of the Act to agency actions is revealed in § 49:966 B, which provides in pertinent part:
No subsequent legislation shall be held to supercede or modify the provisions of this Chapter except to the extent that such legislation shall do so expressly. (emphasis added)
R. Force and L. Griffith, The Louisiana Administrative Procedure Act, 42 La.L. Rev. 1227, 1230-31, (1982).
The Department of Environmental Quality is not part of the Legislature or judiciary, nor has it, by La.Rev.Stat. § 30:1051 et seq. or otherwise, been expressly exempted from application of the Administrative Procedure Act. Furthermore, the Environmental Quality Act contains no provision specifically with respect to the recusation of its subordinate deciding officers or agency members which corresponds to the Administrative Procedure Act's § 49:960, "Ex parte consultations and recusations." That section of the APA provides in pertinent part:
B. A subordinate deciding officer or agency member shall withdraw from any adjudicative proceeding in which he cannot accord a fair and impartial hearing or consideration. Any party may request the disqualification of a subordinate deciding officer or agency member, on the ground of his inability to give a fair and impartial hearing, by filing an affidavit, promptly upon discovery of the alleged disqualification, stating with particularity the grounds upon which it is claimed that a fair and impartial hearing cannot be accorded. The issue shall be determined promptly by the agency, or, if it affects a member or members of the agency, by the remaining members thereof, if a quorum. Upon the entry of an order of disqualification affecting a subordinate deciding officer, the agency shall assign another in his stead or shall conduct the hearing itself. Upon the disqualification of a member of an agency, the governor immediately shall appoint a *119 member pro tem to sit in place of the disqualified member in that proceeding. In further action, after the disqualification of a member of an agency, the provisions of R.S. 49:957 shall apply.
The Administrative Procedure Act, in particular § 49:960 B, relative to recusal of subordinate deciding officers or agency members, is applicable to adjudication proceedings of the Department of Environmental Quality. It remains to be determined whether § 49:960 B and its recusal provision applies to the secretary of DEQ. § 49:960 B applies to "a subordinate deciding officer or agency member." The secretary is not a subordinate deciding officer, upon whose disqualification "the agency shall assign another in his stead or shall conduct the hearing itself." § 49:960. We hold, however, that agency member, includes the secretary. The definition section of the Administrative Procedure Act, § 49:951(2), provides that "`[a]gency' means each state board, commission, department, agency, officer, or other entity which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana." The secretary, who is authorized to make rules and to issue orders and decisions in implementation of the statutes, is thus covered by the definition of "agency" at § 49:951(2) and is an "agency member," whose recusal is provided for in § 49:960 B. Furthermore, the fact that an "agency member" is to be replaced by a gubernatorial appointee is an indication that the designation "agency member" applies to ranking officers, such as department heads, who are initially appointed by the governor.
Reasons for Recusal
Having determined that the Administrative Procedure Act's provision for recusal is applicable to the secretary of DEQ, we must decide what constitutes adequate basis for such recusal and whether the secretary should be recused in this case. § 49:960 B provides that a subordinate deciding officer or agency member "shall withdraw from any adjudicative proceeding in which he cannot accord a fair and impartial hearing or consideration." It also states that: "Any party may request the disqualification of a subordinate deciding officer or agency member, on the ground of his inability to give a fair and impartial hearing...." The provisions are grounded on the proposition that a "fair trial in a fair tribunal is a basic requirement of due process,"[16] a proposition which is applicable to administrative agencies which adjudicate,[17] as well as to the courts.[18]
Not only must there be impartiality on the part of a presiding officer in an administrative adjudication hearing,[19] but there must also be in connection with the hearing the appearance of complete fairness.[20] Impartiality suggests the lack of bias, or prejudice, or personal interest.
The concept of "bias" has a multiplicity of meanings. Five kinds of bias can be rather clearly identified. Some are and some are not a disqualification for making a decision in an adjudication, for a rulemaker, for an enforcer, or for a legislator. Although the five kinds shade into each other and although they *120 come in various combinations, the main ideas about bias in an adjudication may be stated in five sentences, each of which deals with one kind of bias: (1) A prejudgment or point of view about a question of law or policy, even if so tenaciously held as to suggest a closed mind, is not, without more, a disqualification. (2) Similarly, a prejudgment about legislative facts that help answer a question of law or policy is not, without more, a disqualification. (3) Advance knowledge of adjudicative facts that are in issue is not alone a disqualification for finding those facts, but a prior commitment may be. (4) A personal bias or personal prejudice, that is, an attitude toward a person, as distinguished from an attitude about an issue, is a disqualification when it is strong enough; such partiality may be either animosity or favoritism. (5) One who stands to gain or lose by a decision either way has an interest that may disqualify; even a legislator may be disqualified on account of a conflict of interest.
The heart of each of the five propositions is supported by clear and noncontroversial law and by prevailing opinion, except that the first two propositions are commonly misunderstood, especially the effect of a closed mind on issues of law or policy or issues of legislative fact. With that one exception, the problems about the law of bias do not relate to the soundness of the five propositions but relate to their application and to drawing lines in the borderland of each. The disqualification from advance knowledge of adjudicative facts is intrinsically limited to those who perform judicial functions, but personal bias and interest may also disqualify rulemakers, and interest may even disqualify legislators. (Emphasis provided)
K. Davis, Administrative Law Treatise 371-72 (1978).
Thus, a preconceived position concerning law, policy or Legislative facts is not a disqualification. Nor is one disqualified simply by prior exposure to adjudicative facts.[21] Nonetheless, disqualification is appropriate for the administrative decision maker who has prejudged the adjudicative facts in dispute. Davis at 382, § 19:4.
Cinderella Career and Finishing Schools, Inc. v. FTC, 425 F.2d 583 (D.C.Cir. 1970), provides an example of a commission chairman's disqualification for prejudging adjudicative facts.[22] In that case, the FTC chairman made a speech in which he mixed the facts of the case with examples of obvious fraud, prior to the commission's ruling on the matter. The court held that the speech violated the requirements of due process, and remanded the case. However, where a medical board had simply heard testimony at an investigative hearing regarding a practitioner's fitness to retain his license, and sent him notice of a contested hearing, the United States Supreme Court concluded that
[t]he mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the board members at a *121 later adversary hearing. Withrow v. Larkin, 421 U.S. 35, 53, 95 S.Ct. 1456, 1467, 43 L.Ed.2d 712 (1975).
Thus, a line has been drawn between an advance commitment about the facts and some previous knowledge about the facts. Davis at 383.
Turning to the case at hand, we conclude that Secretary Norton's investigative function with regard to Rollins (mere exposure to the evidence) would not alone require recusal. However, we are required to consider whether the Secretary has prejudged the facts in dispute. Since such a determination entails assessing the mental posture of an adjudicative officer, prior courts have devised a "disinterested observer" test to assess whether the administrative officer has in some measure judged the facts in advance of hearing the case. Gilligan, Will & Co. v. SEC, 267 F.2d 461 (2d Cir.1959).
While the secretary has not expressly stated that she has prejudged the facts in dispute, it is practically impossible for a disinterested observer to conclude otherwise in light of her statements. She has repeatedly stated that she intends to use every legal means at her disposal to close Rollins' facility; she has publicly expressed her opinion that Rollins should not be given any more time to comply with the regulations and that Rollins can find other places to carry on their business, expressions which foreordain that she will, on review of the hearing officer's findings of fact and the evidence taken by him, find violations of the regulations, and that the penalty she will assess will be closure of the facility; in fact, she stated that the Department intends to revoke Rollins' permit and close the facility entirely, including the incinerator at the plant.[23] The secretary's statements have made it extremely difficult for her to change her position even in the event that evidence adduced at the hearing should warrant it.[24]
We conclude that the secretary's statements evidence a disqualifying bias which requires that she be recused from any decision making role with regard to the charges against Rollins Environmental Services, Inc.
The Secretary's Replacement
La.Rev.Stat. § 49:960 B, provides that "[u]pon the disqualification of a member of an agency, the governor immediately shall appoint a member pro tem to sit in place of the disqualified member in that proceeding."[25] Inasmuch as we order the Secretary recused, it thus becomes necessary for the governor to appoint a member pro tem to sit in place of the disqualified Secretary.[26]

*122 Decree

For the foregoing reasons the Secretary of Department of Environmental Quality is recused from further participation in these adjudication proceedings against Rollins Environmental Services, Inc.; her replacement is to be appointed by the governor immediately as required by La.Rev.Stat. § 49:960 B.
SECRETARY OF DEPARTMENT OF ENVIRONMENTAL QUALITY RECUSED; GOVERNOR TO APPOINT MEMBER PRO TEM IN PLACE OF SECRETARY.
DENNIS, J., joins fully in the opinion of the court and notes that further support for it may be found in our recent decision in Wilson v. The City of New Orleans, NO. 85-C-0712 in which we observed that an impartial decision maker is essential to due process and that this requirement applies to agencies and government hearing officers as well as judges. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712; Gibson v. Berryhill, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488.
NOTES
[1] The Compliance Order directed Rollins Environmental Services, Inc.:

To submit a plan to DEQ within 30 days which outlines the timetables and steps which the company will take to cease the receipt and/or disposal of hazardous waste at this facility no later than 6 months from the date the plan is submitted.
[2] La.Rev.Stat.Ann. § 30:1072(A) provides in pertinent part:

A. Any enforcement or permit action shall be effective upon issuance unless a later date is specified therein. Such action shall be final and shall not be subject to further review unless, no later than twenty days after the notice of the action is served by certified mail or by hand upon the respondent, he files with the secretary a request for hearing. Upon timely filing of the request, the secretary shall either grant the relief requested or forward the request to the court of appeal. (Emphasis provided)
[3] An examiner or hearing officer, appointed by the administrative officer charged with decision making, has long been recognized as a proper party to conduct hearings and to take evidence. Morgan v. United States, 298 U.S. 468 (1936). And, the Louisiana Administrative Procedure Act clearly anticipates orders prepared by other than agency members. La.Rev.Stat.Ann. § 49:957 provides that

When ... the proposed order is not prepared by a member of the agency, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made final until a proposed order is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral arguments to the officials who are to render the decision.
[4] La.Rev.Stat. § 30:1072(C) provides for appeal to the Court of Appeal, First Circuit from any final decision or order of the Secretary. There is also provision at La.Rev.Stat. § 30:1072(A) for the Secretary, following any enforcement or permit action, to forward any request for hearing which she has not granted, to the Court of Appeal (1072(A)); and the Court of Appeal has supervisory jurisdiction relative to "any preliminary, procedural, or intermediate ruling or decision by the Secretary." La.Rev.Stat. § 30:1072(C).
[5] Mary McCastle, who lives in the vicinity of the facility, had her son report to the DEQ hotline that church services had been disrupted on the evening of August 5 by noxious odors coming from the plant. Mrs. McCastle subsequently intervened as a party in interest on the side of DEQ in the adjudicatory hearing requested by Rollins.
[6] Neiland Roberie, a DEQ employee, stated in deposition that Secretary Norton had instructed him to notify her or the assistant secretary of his division when a complaint was received against Rollins. In accordance with the instruction, she was notified and she proceeded to personally investigate the complaint after 10:00 P.M. on August 5. Although it was not normal procedure for the Secretary to conduct such an investigation personally, she is authorized by La.Rev.Stat.Ann. § 30:1061, subd. D (13) to do so.
[7] The incinerator was thereupon shut down for over seventy days. It was reopened only after the First Circuit Court of Appeal on October 17 granted and made peremptory Rollins' writ application, which urged that the Secretary's August 6 shut down order had expired. (According to La.Rev.Stat. § 30:1073 C(1), an emergency order may remain in effect no longer than fifteen days.)
[8] We note that the respondent has not denied the accuracy of the recited quotes. Besides the quotes from the Baton Rouge Times and Wall Street Journal of August 6 and August 9 respectively, noted above, Secretary Norton was quoted in numerous newspaper articles. The following quotes are typical:

August 6, 1985: "It is our opinion that Rollins should not be given any more time to demonstrate it is a good neighbor. They have been given enough time." (Baton Rouge State Times, "State orders Rollins site to shut down," August 6, 1985, Page 1).
August 7, 1985: "I can't conscionably do anything else. [i.e. close down ROLLINS] .... They have been given enough time already. I intend to use every legal means at my disposal to close this facility and keep it closed." (Baton Rouge State Times, "Rollins says it won't leave Baton Rouge," August 7, 1985, Page 1).
August 20, 1985: "We can't continue to give ROLLINS more and more time to experiment with new technology", and further "we have given them enough time. Now it's time for them to find other places to carry on their business," (Baton Rouge Morning Advocate, "Norton rejects Rollins plan," August 20, 1985, Page 1).
August 26, 1985: "Our position is that the facility is going to be closed, and we're going to use every legal means to close it." (Wall Street Journal, "Rollins seeks hearing over its waste site in Baton Rouge, LA. August 26, 1985").
September 6, 1985: "I'm still moving toward closure. The State intends to use every means to close the plant .... I'm not backing down at all. If anything, I'm strengthening the State's case." (Baton Rouge Morning Advocate, "Rollins license hearing planned," September 6, 1985, Page 1).
September 26, 1985: Secretary Norton speaking at a press conference stated, "We do not intend for the incinerator to remain open as a commercial incinerator. We have no intention to allow the incinerator to remain open while the rest of the facility closes. It is our intention to treat this problem as a sitewide problem to close the entire facility ...."
[9] The three offices within the department include the office of air quality and nuclear energy, the office of water resources, and the office of solid and hazardous waste.
[10] Although § 30:1073 C(1) provides that "the commission" may act as well as the secretary, etc., § 30:1062 states that the term "commission", as used in this Chapter, means the Secretary of the Department of Environmental Quality. In fact, the Environmental Control Commission predated the Department of Environmental Quality, and § 30:1062 transferred the powers of the Environmental Control Commission to the secretary, DEQ.
[11] We note that § 30:1073 E(1) also allows "the commission" to assess penalties. See footnote 10 above.
[12] For those found in violation of the requirements of this Chapter, a civil penalty of not more than twenty-five thousand dollars for each day of violation may be assessed.
[13] La.Rev.Stat.Ann. § 30:1061 D(5).
[14] § 30:1072 C departs from the procedure authorized in the Administrative Procedure Act, which provides for review in the district court. In fact, § 30:1072 C specifically provides that § 49:962 and § 49:964 do not apply to decisions and orders of the Secretary. Those sections of the Administrative Procedure Act provide, among other things, that judicial review of a final decision or order in an adjudication proceeding is instituted by filing a petition in the district court.
[15] According to the 1974 amendment,

(2) "Agency" means each state board, commission, department, or officer authorized by law to make rules or to formulate and issue decisions and orders except the legislature or any branch, committee, or officer thereof and the courts.
[16] In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).
[17] We note that this opinion has to do with fundamental fairness in agency adjudication proceedings. Our treatment of due process in a statutorily directed recusal of an adjudicative officer is not applicable to, nor intended to be applicable to, other administrative functions of this executive agency. Such functions include, but are not limited to, investigating and policing regulations for the protection of the environment.
[18] Gibson v. Berryhill, 411 U.S. 564, 578-79, 93 S.Ct. 1689, 1697-98, 36 L.Ed.2d 488 (1973).
[19] Mezines, Stein and Gruff, Administrative Law 36.01 (1977) (citing Administrative Procedure Act, 5 U.S.C. 556(b)).
[20] Amos Treat & Co. v. SEC, 306 F.2d 260, 267 (1962).
[21] This principle is supported by Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which in its major holding is a leading United States Supreme Court case requiring a hearing in the interest of due process before important rights may be terminated. In Goldberg, public assistance payments had been cancelled without affording the recipient the opportunity for an evidentiary hearing. Having decided that the pretermination hearing was necessary, the Court further discussed the requisites of the required hearing. In finally addressing the requirements of a proper decision maker, the court stated that "prior involvement in some aspects of a case will not necessarily bar [an] official from acting as a decision maker. He should not, however, have participated in making the determination under review."
[22] In Cinderella, the full Commission in part reversed a hearing examiner's determination that the charges in the complaint should be dismissed. On appeal, Cinderella urged that the Commission Chairman should have recused himself from participation in the review. The Court of Appeal agreed, and remanded the case for reconsideration without the participation of the Commission Chairman. The Chairman was thus effectively recused from further participation in that case.
[23] See footnote 8 for a succession of statements attributable to the Secretary.
[24] This concept was well stated in Cinderella Career and Finishing Schools, Inc. v. FTC, 425 F.2d 583, 590 (D.C.Cir.1970):

Conduct such as this may have the effect of entrenching a Commissioner in a position which he has publicly stated, making it difficult, if not impossible, for him to reach a different conclusion in the event he deems it necessary to do so after consideration of the record.
[25] Earlier action by the secretary, such as the cease and desist order, the compliance order, and the appointment of hearing officer Aub Ward, are not nullified by this decision to recuse the secretary.
[26] The majority concludes that for the present disposition of this case it is necessary only to refer to § 49:960 B and the fact that under that statute the Governor must appoint a member pro tem to sit in place of the disqualified Secretary. Accordingly, the following comments are those of the author of this majority opinion only.

The author is of the opinion that the three Assistant Secretaries of D.E.Q. should not be excluded from consideration when the Governor chooses the Secretary's replacement in these adjudication proceedings, for the reasons which follow.
The Administrative Procedure Act is an enactment of general application. In § 49:960 B, the Act speaks of a gubernatorial replacement for a recused agency member, but it does not specifically contemplate the situation we have here with respect to the Department of Environmental Quality. The presumption underlying the provision for a gubernatorial replacement in the Administrative Procedure Act is that a replacement for a recused agency member from outside the agency is imperative, that the participation of an officer occupying the position of the agency member who is to be recused is required. That presumption is not well-founded in the case of the DEQ, its compliance orders and adjudicative hearings. There are within the Department of Environmental Quality three assistant secretaries, besides the secretary, who are by statute empowered to issue compliance orders and cease and desist orders (§ 30:1073 C (2) and (3)), and assess civil penalties (§ 30:1073 E). There is therefore some question as to whether § 49:960 B's provision for a gubernatorial replacement for an "agency member" is applicable where as here the governmental entity and the Legislative scheme allows an equally qualified alternate to perform the function which had been undertaken by the disqualified agency member.
All three assistant secretaries are already appointed by the governor, not by the secretary. In fact, § 30:1061 C(2) provides that the "assistant secretary shall serve at the pleasure of the governor and shall be paid a salary which shall be fixed by the governor." This provision establishes a degree of independence in the office of the assistant secretary which minimizes the possibility of influence by the secretary in a case such as this, where the Secretary is to be recused from participating in an adjudication proceeding. One assistant secretary is in charge of the Office of Air Quality. That assistant secretary is presumably well versed in the statutes at issue, the industry requirements and the inner workings of the Department.