RWHIPPLE, J.
This appeal involves the revocation of a gaming employee permit. Upon recommendation by the Louisiana State Police, Riverboat Gaming Division (“the Division”), the Louisiana Gaming Control Board (“the Board”) revoked the non-key gaming employee permit which had been granted to plaintiff, Charles Hall, which allowed Hall to work as a gaming employee on riverboat casinos. Hall opposed the revocation through an administrative process that upheld the revocation. He petitioned for judicial review in the district court, where the revocation was affirmed. Hall appeals the decision of the district court. We affirm.
FACTS AND PROCEDURAL HISTORY
On August 22, 1980, Hall was convicted in Nevada of two counts of sexual assault and sentenced to five years imprisonment, to run concurrently, on each count. Hall was released from prison in October 1983.
On October 20, 1993, Hall applied for a Louisiana Gaming Employee Permit to work as a non-key gaming employee on a riverboat licensed to conduct gaming operations in Louisiana. In his application, Hall indicated that in Nevada, in November 1979, he had been arrested, convicted and served prison time for “[Sexual] Assault/Ex-Spouse/Bitter Family-Feud [sic]” and that he was released from prison in October 1983. Hall was granted a non-key gaming employee permit in 1993, and each year thereafter, upon application, he was issued a renewed gaming employee permit. These renewals continued until October 1996.
On October 28, 1996, Hall received a “Notice of Revocation” from the Board wherein he was informed that the Division had recommended revocation of his permit because he was not qualified to hold a gaming employee permit. The notice explained that the revocation sought by the Division was based on LSA-R.S. 27:76, which provides in pertinent part:
RThe division shall not award a license or permit to any person who is disqualified on the basis of any of the following criteria:
[[Image here]]
(3) The conviction of or a plea of guilty or nolo contendere by the applicant, or of any person required to be qualified under this Chapter as a condition of a license, for an offense punishable by imprisonment of more than one year.
The “Notice of Revocation” was signed by the Chairman of the Board and was apparently issued in response to a Memorandum Recommending Revocation of Gaming Employee Permit, submitted to the Board by the Division. Hall received both the Notice and a copy of the Memorandum.
In response, Hall requested an administrative hearing before a hearing officer of the Board, which hearing was held on February 3, 1997. On February 18, 1997, the hearing officer submitted a report to the Board and Hall recommending that the Board revoke Hall’s permit. Subsequently, in a decision purportedly signed on September 29, 1997, but more likely signed on an earlier date, the Board issued a decision revoking Hall’s gaming employee permit.[1] Hall then sought judicial review and a stay of the Board’s decision in the Nineteenth Judicial District Court. After a hearing on November 10, 1997, the district court affirmed the Board’s decision to revoke Hall’s permit. It is from *775 this decision that Hall appeals, presenting four assignments of error.
STANDARD OF REVIEW
Any person whose application for a gaming permit has been denied by the Division may appeal to the Commission. LSA-R.S. 27:88(A). A person adversely affected by a decision of the Commission may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act. LSA-R.S. 27:89. The Administrative Procedure Act specifies that .judicial |4review shall be confined to the record, as developed in the administrative proceedings. LSA-R.S. 49:964(F). The district court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency’s statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) manifestly erroneous. LSA-R.S. 49:964(G); Eicher v. Louisiana State Police, Riverboat Gaming Enforcement Division, 97-0121, pp. 4-5 (La.App. 1st Cir.2/20/98), 710 So.2d 799, 802, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51. The manifest error test is used in reviewing the facts as found by the administrative tribunal; the arbitrary and capricious test is used in reviewing the administrative tribunal’s conclusions and its exercise of discretion. Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152, 1159 (La.1984). On legal issues, the reviewing court gives no special weight to the findings of the administrative tribunal, but conducts a de novo review of questions of law and renders judgment on the record. See State, Through Louisiana Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 95-2355, p. 5 (La.App. 1st Cir.8/21/96), 694 So.2d 316, 319.
ASSIGNMENT OF ERROR NUMBER TWO [2]
In his second assignment of error, Hall alleges that the Board’s decision should be reversed because the administrative decision was made upon unlawful procedure based upon the hearing officer’s alleged failure to provide a hearing report to Hall, citing LSA-R.S. 49:964(G)(3) and LSA-R.S. 27:25(B)(3). At the time of the February 3, 1997 administrative hearing, LSA-R.S. 27:25(B)(3) Isprovided:
As to every matter on which a hearing is held, the presiding hearing officer shall submit a report to the board which shall contain, at a minimum, the record of the hearing, including all submissions, his finding of the facts that are pertinent to the decision, his conclusions of applicable law related to the decision, and his recommendation regarding the action of the board. The submission shall be in writing, shall be provided to all involved applicants prior to the board reaching a decision, and shall be a public record, except for any submitted materials which are confidential pursuant to law. (Emphasis added).
Louisiana Revised Statute 49:955(E) sets forth the items to be included in a record of an administrative hearing and provides:
E. The record in a case of adjudication shall include:
(1) All pleadings, motions, intermediate rulings;
(2) Evidence received or considered or a resumé thereof if not transcribed;
(3) A statement of matters officially noticed except matters so obvious that statement of them would serve no useful purpose;
(4) Offers of proof, objections, and rulings thereon;
(5) Proposed findings and exceptions;
(6) Any decision, opinion, or report by the officer presiding at the hearing.
Hall represents in his appeal brief that “no such report containing the statutorily mandated information and documentation was *776 provided to either him or counsel ... prior to the Board reaching a final decision in this matter.” We find no support for this claim.
• The record shows that by correspondence dated February 18,1997, the Gaming Control Board sent to Hall as an enclosure a copy of the report of the hearing officer. The cover letter refers to the enclosure and goes on to explain that the hearing officer’s report is merely a recommendation and not a final decision. The report sent to Hall contains a list of all submissions by the state, a copy of the hearing officer’s findings of fact, conclusions of law and his recommendation. While the report did not contain a list of all of Hall’s submissions, the report references the Board of Pardons application, which contains Hall’s resumes, | (¡certificates of recognition and letters of recommendation. Further, the report indirectly refers to the brief filed on behalf of the applicant, by listing the arguments presented therein.
Thus, it appears that Hall’s argument turns upon the fact that no transcript of the hearing accompanied the report sent to him. We find that LSA-R.S. 49:955(E) does not mandate that a transcript be included in the record. Louisiana Revised Statute 49:955(E)(2) states that a resume of the evidence received or considered may be included in the record where there is no transcription.
In the instant case, we find that the hearing officer properly made a resume of the evidence submitted by the state and addressed in his report the evidence submitted by the plaintiff which was not duplicative of the state’s evidence. Louisiana Revised Statute 49:955(F) explains that an agency is under no requirement to make a transcript unless the statute governing the proceedings requires it. In the instant case, we find no requirement in LSA-R.S. 27:25 or other provisions of the Louisiana Gaming Control Law that a transcript be made of such hearings. Therefore, in accordance with LSA-R.S. 49:955(F), if Hall had desired a copy of the transcript of the proceeding, he was obligated to request that one be made and would have been responsible for the costs. Apparently, this did not occur herein. On review, we find that Hall was provided a sufficient record of the February 3, 1997 hearing. Further, we find no merit to his assertion that he was not given timely notice of the hearing officer’s report prior to the Board’s decision. Instead, we find the record supports the conclusion that the hearing officer’s report was sent to him by correspondence dated February 18, 1997, and that he received a report containing the required information and documentation prior to the Board’s decision, in accordance with LSA-R.S. 27:25(B)(3).[3]
17TI1ÍS assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER FOUR
Hall’s fourth assignment of error presents two issues. Hall presents what is essentially an equitable estoppel argument, contending that the Board should be precluded from revoking his permit as of 1996 because he had held a permit for three years previously. We find no merit in this argument.
When Hall was first granted a permit in 1993, the criteria for receiving a gaming permit were the same as they were in 1996, when his permit was revoked.[4] In 1993, the pertinent statute was former LSA-R.S. 4:536. By Acts 1996, First Extraordinary Session, No. 7, § 3, this statute was redesig-nated as LSA-R.S. 27:76. However, the wording of the provision did not change. That Hall was mistakenly granted a permit in 1993, despite the existence of former statute LSA-R.S. 4:536, and that his permit was renewed twice provides no foundation to his argument that the Board cannot now revoke his permit. Equitable considerations and es-toppel cannot be permitted to prevail when in *777 direct contravention of positive written law.[5] Morris v. Friedman, 94-2808, p. 9 (La.11/27/95), 663 So.2d 19, 26. This argument lacks merit.
Additionally, Hall asserts that the 1997 revocation of his gaming permit by the Board pursuant to LSA-R.S. 27:76(3), due to his prior conviction for an offense punishable by imprisonment for more than one year, should be reversed, based upon the provisions of LSA-R.S. 37:2950. Louisiana Revised Statute 1837:2950(A) provides:
Notwithstanding any other provisions of law to the contrary, a person shall not be disqualified, or held ineligible to practice or engage in any trade, occupation, or profession for which a license, permit or certificate is required to be issued by the state of Louisiana or any of its agencies or political subdivisions, solely because of a prior criminal record, except in cases in which the applicant has been convicted of a felony, and such conviction directly relates to the position of employment sought, or to the specific occupation, trade or profession for which the license, permit or certificate is sought.
In subsequent paragraphs, this statute indicates that if an agency decides to prohibit an applicant from engaging in an occupation because of a prior criminal conviction, that decision must be in writing and may be appealed under the provisions of the Administrative Procedure Act. LSA-R.S. 37:2950(B) and (C). A number of agencies are excepted from the provisions of this statute, including “any law enforcement agency,” but the Louisiana Gaming Control Board and its predecessor, the Commission, are not specifically named as entities to which the statute is inapplicable. LSA-R.S. 37:2950(D)(1); Eicher, 97-0121 at p. 9, 710 So.2d at 805. Thus, Hall argues, LSA-R.S. 37:2950 supercedes the application of LSA-R.S. 27:76(3).
As this court noted in Eicher, 97-0121 at p. 10, 710 So.2d at 805-806, wherein a similar argument was flatly rejected, LSA-R.S. 37:2950 cannot be read to prohibit the Division from barring the employment of persons, including Hall, who have convictions punishable by imprisonment of more than one year. To do so would render ineffective the later expression of the legislature through LSA-R.S. 27:76 wherein the legislature has clearly stated its intention to impose strict controls on the legitimate gaming industry. The clear language of LSA-R.S. 27:76(3) not only permits, but requires, that Division agents reject applicants who have such a criminal record. Eicher, 97-0121 at p. 10, 710 So.2d at 805-806. Therefore, we find appellant’s second assignment of error without merit.
Jain his third and fourth assignments of error, appellant raises constitutional issues based upon the Due Process clauses of the Louisiana and United States Constitutions and upon the Equal Protection clause of the Louisiana Constitution.
ASSIGNMENT OF ERROR NUMBER ONE
Hall also alleges that the revocation proceeding by the Board violated Due Process, based upon the requirement for a neutral and detached administrative officer as set forth in Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Specifically, Hall challenges the validity of LSA-R.S. 27:15 and Rule 104 of the Louisiana Gaming Control Board insofar as it allows the Chairman of the Board to initiate the administrative revocation proceedings and likewise permits the Chairman to make the final decision as to the propriety of the revocation if the employee appeals the permit revocation to the administrative body.
In the instant case, the Division sent a “Memorandum Recommending Revocation” regarding Hall’s gaming employee permit to the Board, as provided by LSA-R.S. 27:57(B)(7) and 58(9). In response to this recommendation, the Board sent a Notice of Revocation to Mr. Hall, in accordance with LSA-R.S. 27:15(B)(1), (B)(3)(b)(ii), (C)(5) and 27:16. The Notice of Revocation was signed by the Chairman of the Board, and a copy of *778 the Memorandum submitted by the Division was attached to the Notice sent to Hall.
Hall contends that because the Chairman signed the Notice of Revocation, the Chairman should be disqualified from the final decision-making process pursuant to LSA-R.S. 49:960. Hall alleges the Chairman was privy to the facts of the case and thus was partial or biased. We find no basis in law or in the facts of this case to support Hall’s contention that the Chairman’s signature on the Notice of Revocation disqualifies him from participation in the final decision process.
| ipAn impartial decision maker is essential to an administrative adjudication that comports with due process, even if de novo review is available. Butler v. Department of Public Safety and Corrections, 609 So.2d 790, 793 (La.1992); Withrow, 421 U.S. at 46-47, 95 S.Ct. at 1464. To this end, the Louisiana Administrative Procedure Act attempts to prevent partiality or bias in adjudicative settings by prohibiting ex parte consultations and requiring recusal of subordinate deciding officers or agency members from proceedings in which they cannot accord a fair and impartial hearing or consideration. LSA-R.S. 49:960; Butler, 609 So.2d at 793.
The Louisiana Supreme Court has identified five possible kinds of “bias” calling the decisionmaker’s impartiality into question:
(1) A prejudgment or point of view about a question of law or policy ... (2) a prejudgment about legislative facts that help answer a question of law or policy ... (3) Advance knowledge of adjudicative facts that are in issue ... (4) A personal bias or personal prejudice, that is, an attitude toward a person, as distinguished from an attitude about an issue ... (5) One who stands to gain or lose by a decision either way ... [or] a conflict of interest.
Butler, 609 So.2d at 794-795 (quoting Matter of Rollins Environmental Services, Inc., 481 So.2d 113, 119-120 (La.1985)). A party challenging the constitutionality of an administrative adjudication on the grounds of bias or prejudice of the decisionmaker must overcome the strong presumption of honesty and integrity in those serving as adjudicators. That party must present convincing evidence that the combination of functions in the same individual poses such a risk of actual and substantial bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be preserved. Butler, 609 So.2d at 793. The party must demonstrate some particular bias, which goes beyond the mere combination of functions in a single agency. Butler, 609 So.2d at 794; see Withrow, 421 U.S. at 47, 95 S.Ct. at 1464.
nIn the present case, Hall has pointed to no facts which support a showing of prejudice except that the Chairman both signed the Notice of Revocation and participated in the final administrative decision. This alone does not constitute a showing of impartiality. Both the Notice of Revocation and the attached Memorandum Recommending Revocation of Gaming Employee Permit reflect that the Riverboat Gaming Division of the State Police made the investigation and the recommendation. Moreover, one is not disqualified as an impartial decisionmaker simply by prior exposure to adjudicative facts. Matter of Rollins Environmental Services, Inc., 481 So.2d at 120.[6]
In view of the fact that Hall has failed to show any particular fact that would indicate the Chairman had prejudged the revocation proceeding or that indicated a personal bias or interest in the outcome of the case, this assignment of error is without merit. We find that the Chairman acted well within the statutory and constitutional limits in signing the Notice of Revocation and in participating in the final decision making process.[7]
This assignment of error also lacks merit.
*779 ASSIGNMENT OF ERROR NUMBER THREE
In his third assignment of error, appellant alleges that the qualifications for the riverboat gaming permit violate Article I, Section 3, the Equal Protection Clause, of the Louisiana Constitution. Article I, § 3 of the Louisiana Constitution provides, in pertinent part:
No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious 112ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.
The Louisiana Supreme Court has noted that La. Const, art. I, § 3 provides for three levels of constitutional review or scrutiny.
Laws which classify individuals based on race or religious beliefs are repudiated completely. An intermediate level of scrutiny is reserved for laws which classify persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliation. The lowest level of scrutiny applies to laws which classify persons on any basis other than those enumerated in La. Const, art. I, § 3.
Such laws need only be rationally related to a legitimate governmental purpose, and a person attacking the constitutionality of such a classification has the stringent burden of demonstrating that the law does not suitably further any appropriate state interest. Progressive Security Insurance Company v. Foster, 97-2985, p. 17 (La.4/23/98), 711 So.2d 675, 686. Therefore, under La. Const. art. I, § 3, laws which classify persons on any basis other than those specifically enumerated therein are subject only to minimal scrutiny.
In the present case, LSA-R.S. 27:76 prohibits the granting of a gaming employee permit to anyone who has been convicted of or pleaded guilty to an offense punishable by more than one year of imprisonment. This classification does not involve any of the suspect or intermediate classifications recognized under traditional Equal Protection analysis. Thus, the rational relationship standard is the proper standard of review. Under this standard, the challenger must establish that the legislative classification at issue is not rationally related to any legitimate state purpose. Pierre v. Administrator, Louisiana Office of Employment Security, 553 So.2d 442, 447 (La.1989).
The Legislature has clarified that it is a matter of public policy that “gaming related employees of ... riverboats ... be regulated, licensed, and controlled in a | ^manner as to ... protect the public health, safety, morals, good order, and general welfare of our citizens.” LSA-R.S. 27:42; see also LSA-R.S. 27:2. We find that the prohibition contained in LSA-R.S. 27:76(3) is rationally related to the protection of the general welfare of the citizens of Louisiana by preventing certain convicted felons from being in direct contact with the public and other employees in an environment which, by its very nature, involves large sums of money and tremendous potential for corruption, if not strictly regulated.
Hall further argues that the criteria for granting a gaming employee permit, found in LSA-R.S. 27:76, improperly encompasses a higher standard than the criteria for granting permits and licenses under the Video Draw Poker Devices Law in LSA-R.S. 27:310. As Hall correctly notes, LSA-R.S. 27:76 prohibits the granting of a gaming employee permit to anyone who has ever been convicted of an offense punishable by more than one year imprisonment, while LSA-R.S. 27:310 prohibits the granting of a license or permit only if the applicant has been convicted of an offense punishable by more than one year of imprisonment within ten years of the date of application. We conclude that the Legislature has a rational basis for the standards regulating two different involvements in the gaming industry. Gaming employees working on riverboats are *780 employed in direct contact with the public, other employees, and large amounts of money. Moreover, riverboat employees are involved in larger scale gaming operations. In contrast, video poker machine operations are more limited in scope, and involve an additional level of security through the electronic monitoring of the devices by the state police.
Because we find that there is a rational basis for the classification the Legislature used in prohibiting the granting of gaming employee permits to anyone who has been convicted of an offense punishable by imprisonment for more than | Mone year, and that the Legislature has a reasonable basis for applying a different classification in the Video Draw Poker Devices law, we reject Hall’s arguments.
This assignment of error also lacks merit.
CONCLUSION
For the foregoing reasons, we reject Hall’s appeal and affirm the November 21, 1997 order of the district court upholding the decision of the Louisiana Gaming Control Board, at the costs of appellant, Charles E. Hall.
AFFIRMED.
CARTER, C.J., concurs with reasons.

. Since Hall received notice of the Board's decision by letter dated September 2, 1997, it appears that the decision was signed prior to September 29, 1997. However, any error in this regard is of no moment, considering the issues before us.

. While we address all of Hall’s assignments of error, for purposes of convenience, we have not addressed them in the order set forth by Hall.

. We further note that LSA-R.S. 27:25(B)(3) was amended in 1997, by Act No. 1076, § 1 (effective on July 14, 1997) to remove the requirement that an applicant receive a copy prior to the Board's decision.

. See former LSA-R.S. 4:530 and 543, redesig-nated by Acts 1996, 1st Ex.Sess., No. 7, § 3, as LSA-R.S. 27:70 and 84, respectively.

. We note that the Louisiana Legislature expressly declared in the Gaming Control Law that "no recipient of any such ... permit ... acquires any vested interest or right therein.” LSA-R.S. 27:2(B).

. See also, Withrow, 421 U.S. at 56, 95 S.Ct. at 1469, wherein the Court noted: "It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate ... due process of law.”

. We additionally find that the Board acted wholly within its legislative authority, pursuant to LSA-R.S. 27:15(C)(5), in creating Rule 104 which authorizes the chairman to exercise all *779 powers and authority of the board, subject to six exceptions listed therein. Additionally, we note that the Board has the authority to veto any decision by the chairman. LSA-R.S. 27:15(0(2).