| WILLIAM H. BYRNES, III, Chief Judge.
STATEMENT OF THE CASE
In No. 02-14176 on the docket of the Civil District Court for the Parish of Orleans, plaintiffs, Thomas P. Lowenburg and other utility ratepayers of the defendant, Entergy New Orleans, Inc. (“ENO”), sought judicial review by appeal or by supervisory writ of certain resolutions and orders issued on August 8, 2002 by the Council of the City of New Orleans (Council) or, alternatively, for declaratory and injunctive relief. In No.2001-19258, The Alliance for Affordable Energy (Alliance) filed a petition against the Council for “Declaratory [sic] and Specific Performance” seeking a declaration that certain provisions of a 1991 agreement between the Alliance, Citizens for Safe Energy (CFSE), the Council, New Orleans Public Service, Inc. (NOPSI), ENO’s predecessor, and an individual, Gary Groesch applies to proceedings before the Council and an order requiring the Council to intervene on behalf of the petitioners in the Lowenburg lawsuit.
The underlying issue in the litigation giving rise to these consolidated appeals is allocation of costs incurred by ENO’s predecessor, NOPSI, in connection with construction of the Grand Gulf I Nuclear Power Plant. In 1985, the Federal Energy Regulatory Commission (FERC) allocated seventeen percent of pthe plant’s cost to NOPSI. FERC found that the plant had been planned and completed to meet the needs of the Middle South Utilities System, of which NOPSI was a part, as a whole and found that this was part of a reasonable system plan to diversify power sources. FERC established rates that would allow Middle South Energy, the plant’s owner, to recoup all of its Grand Gulf costs from the Middle South power companies in proportion to their relative demand for all energy generated by the Middle South system. NOPSI’s demand was nine percent of the total system demand, but since NOPSI had no nuclear plant of its own it was required to bear seventeen percent of the Grand Gulf costs in order to bear its nine percent share of *806 the total nuclear power costs. New Orleans Public Service, Inc. v. Council of the City of New Orleans, 911 F.2d 998, 996 n. 3 (5th Cir.1990).
In 1988, the Council in the exercise of its rate regulation function determined that NOPSI’s subsequent conduct was imprudent and disallowed the imposition on ratepayers through the NOPSI rate base of approximately thirty-one percent of the costs on ratepayers through the NOPSI rate base. In order that NOPSI might avoid insolvency, the Council granted a partial rate increase so that NOPSI might recover a portion of its imprudently invested costs.
NOPSI sued the Council in state and federal court. The federal courts abstained; however the United States Supreme Court reversed and remanded the cases to the district court for consideration of the merits. New Orleans Public Service, Inc. v. The Council of the City of New Orleans, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). In deciding whether the district court’s abstention was correct, the issue was whether the Council proceedings were judicial in nature so as to apply an [¡¡extension of the Younger[1] principle that absent extraordinary circumstances federal courts should not enjoin pending state criminal proceedings. The Supreme Court found the Council rate-making proceedings not to be judicial in nature, holding:
[Abstention] requires, however, that the Council proceeding be the sort of proceeding entitled to Younger treatment. We think it is not. While we have expanded Younger beyond criminal proceedings, and even beyond proceedings in-courts, we have never extended it to proceedings that are not “judicial in nature.” [Citations omitted.] The Council’s proceedings in the present case were not judicial in nature.
New Orleans Public Service, Inc. v. Council of the City of New Orleans, 491 U.S. 350, 369-70, 109 S.Ct. 2506, 2519[, 105 L.Ed.2d 298] (1989).
On remand, the federal district court rejected NOPSI’s argument that federal law preempted the Council’s order and stayed NOPSI’s remaining claims in light of pending state court proceedings. The United States Fifth Circuit Court of Appeals affirmed in New Orleans Public Service, Inc. v. The Council of the City of New Orleans, supra..
In the related Louisiana state court litigation, NOPSI claimed the Council abused its discretion in disallowing the “impru-dency” costs, and the Council sought to enforce its rate rule. Gary Groesch, a principal in both the Alliance and CFSE, sued the Council alleging abuse of discretion in allowing the partial rate increase. In Alliance for Affordable Energy v. Council of the City of New Orleans, 578 So.2d 949, 953 (La.App. 4 Cir.1991), this Court amended the Council’s rate order to disallow the pass through of any of the imprudently incurred costs for a total disal-lowance of $476,580,000. The Louisiana Supreme Court granted writs and, pending a decision of that court, the parties in 1991 |4confected a settlement agreement. The agreement and the Supreme Court’s decision in Gulf States Utilities v. Louisiana Public Service Commission, 578 So.2d 71 (La.1991)[2] resulted in the Supreme *807 Court’s vacating this Court’s decision in a consent decree. Alliance for Affordable Energy v. The Council of the City of New Orleans, 588 So.2d 89 (La.1991).
The 1991 settlement agreement incorporated by reference in the Louisiana Supreme Court’s Alliance consent decree and enacted into law[3] by the Council in Resolution and Order No. R-91-157 is a focus of the instant litigation. The agreement was signed by Gary Groesch individually and as attorney for the Alliance and CFSE, by the Advisors to the Council and by a NOPSI vice-president. The settlement agreement allowed NOPSI to recover a part of its Grand Gulf I costs over a ten year period and fixed rates for electricity for a five year period. Mr. Groesch, the Alliance and CFSE were given $380,000 in attorney’s fees.[4]
After having confected the settlement agreement, Messrs. Groesch and Lowen-burg concluded that their settlement could be challenged under a 1922 settlement agreement between NOPSI and the City memorialized as Ordinance No. 6822, C.C.S. that provided for a maximum rate of return of seven and one-half percent on NOPSI’s rate base. There is no evidence in the record to indicate that the Alliance, CFSE or Mr. Groesch or his succession have placed the $380,000 in attorney’s fees provided by the 1991 agreement in an escrow account or court ^registry. It does not appear that the plaintiffs seek to overturn the portion of the agreement that awarded them these significant attorney’s fees.
By the time Messrs. Groesch and Low-enburg brought a class action suit on behalf of residential and commercial utility customers for alleged overcharges, NOPSI had been succeeded by ENO. ENO filed exceptions of lack of subject matter jurisdiction and failure to exhaust legislative remedies, which the trial court overruled. This Court denied ENO’s application for supervisory review; however, the Louisiana Supreme Court remanded the writ application to this Court for consideration on the merits.
On remand, we granted ENO’s writ application, holding that the Council’s pronouncements regarding rate regulation, including the 1922 ordinances and subsequent regulations, are subject to interpretation. The Home Rule Charter of the City of New Orleans (Charter) vests the Council with original jurisdiction over matters involving regulation of utility rates. We held that the underlying subject matter of the case involves utility rate regulation, and because of the powers vested in the Council under Charter Section 3-130(1), the Council is entitled to have the opportunity to interpret their ordinances and resolutions before the matter goes to the trial court for review. We held that the trial court lacks original subject matter jurisdiction in the case and that the class plaintiffs must first present their claims to the Council. Lowenburg v. Entergy New Orleans, Inc., 99-1270 pp. 4-5 (La.App. 4 Cir. 5/17/2000), 763 So.2d 751, 753.
*808 The concurring opinion points out that because this is primarily a rate case, that is, one concerning establishment and regulation of electric utility rates, a matter reserved to the exclusive jurisdiction of the New Orleans City Council, the | fidoctrine of primary jurisdiction suggests that this case should first be considered by the Council. In Daily Advertiser v. Trans-La., 612 So.2d 7 (La.1993), the Supreme Court relied on primary jurisdiction in holding a district could lacked subject matter jurisdiction where the crux of the dispute was a rate matter within the exclusive jurisdiction of the Louisiana Public Service Commission. Where some claims were cognizable in district court and others were within the Commission’s exclusive jurisdiction, the Supreme Court dismissed the claims for rate determinations and reparations for overcharges and deferred the remainder of plaintiffs claims until after completion of the Commission’s proceedings. See, Lowenburg, 763 So.2d at 754. The Supreme Court in the Daily Advertiser case held that it would be an inefficient use of the courts and the Commission not to have the benefit of the Commission’s expertise.
Following our 2000 Lowenburg decision, Messrs. Groesch and Lowenburg filed a complaint against ENO before the Council, alleging that since 1975 ENO and its predecessor, NOPSI, charged utility rates designed to yield a rate of return in excess of that set by the 1922 ordinance. Plaintiffs asked the Council to investigate the charges, interpret the applicable ordinances and resolutions and order a refund of NOPSI/ENO’s alleged overcharges. The Council by Resolution No. R-01-228 ordered the parties to file briefs outlining their respective positions, and on August 16, 2002, established a discovery schedule and set an evidentiary hearing to address factual and legal issues in dispute.
One of the stipulations of the 1991 settlement agreement requires the parties to intervene as a litigant in any forum in which the efficacy, propriety, legality or enforceability of any provision of the 1991 settlement might be challenged. Since the crux of the pending Council proceedings was a claim that the agreement |Yviolated the 1922 rate resolution, the Alliance was required to become a party to the proceedings.
In response, Messrs. Groesch and Low-enburg filed procedural motions before the Council. The first asked the Council to recuse itself based on alleged bias, contending that the Council having signed the 1991 settlement agreement, it was bound actively to support the agreement and, implicitly could not find, as plaintiffs suggested, that the agreement violated the 1922 rate ordinance. The second procedural motion sought to disqualify the Council’s advisors, the law firm of Sullivan & Worcester, LLP (S & W) based on an alleged conflict of interest and to conduct discovery about the advisor’s alleged conflicts. Plaintiffs claimed that since ENO claimed an adverse decision would force the company into insolvency, S & W’s representation of institutional clients who directly or beneficially own a substantial stake in ENO’s parent company’s stock creates a conflict of interest. Furthermore, plaintiffs claimed that because some of the same lawyers advised the Council concerning rate matters, those lawyers now stand to gain or lose by a decision in the Council proceeding. Since plaintiffs contend that any change in the effect of the 1922 ordinance required enactment of an amending ordinance, these lawyers’ alleged failure to suggest enactment of a specific amendment to the 1922 ordinance could expose them to a negligence claim. The plaintiffs’ third claim against S & W arises from the fact that a member of the firm, Clinton Vince, prior to his association *809 with the firm, signed the 1991 settlement agreement on behalf of the Council’s advis-ors. Furthermore, plaintiffs allege bias because Mr. Vince, in a letter to Council consultant Professor Dane Ciolino dated June 27, 2002, expressed the opinion that plaintiffs’ case is without merit. In the District Court hearing, | ^plaintiff's added a claim that S & W should be disqualified because the attorneys are not licensed to practice law in Louisiana.
The Council denied plaintiffs’ procedural motions, finding that it is the sole body authorized to hear rate regulation cases and that, based on Professor Ciolino’s review of the facts, there was no conflict of interest. Resolution and Order No. R-02-484 of August 8, 2002.
Plaintiffs then filed a petition in Civil District Court seeking review of these Council actions. The district court dismissed the petitions on exceptions of lack of subject matter jurisdiction, no cause and no right of action. The Lowenburg plaintiffs and the Alliance appeal the February 10, 2003, judgment of the Civil District Court sustaining the Council’s exceptions of lack of subject matter jurisdiction, no right and no cause of action. The trial court denied as moot the plaintiffs’ motion to stay the regulatory adjudicatory proceeding before the City Council during the pendency of the judicial appeals. The appeals were consolidated.
ENO answered the appeals, seeking review of the February 10, 2003 judgment in the Lowenburg suit denying as moot ENO’s exception of res judicata.
We affirm.
FIRST ASSIGNMENT OF ERROR: The judgment is contrary to Article 5, § 16(B) of the Louisiana Constitution, vesting district courts with appellate jurisdiction as provided by law. Section 3-130(7) of the Home Rule Charter of the City of New Orleans expressly grants appellate jurisdiction to review orders of the City Council to the Civil District Court for Orleáns Parish. |9 SECOND ASSIGNMENT OF ERROR: The judgment is contrary to Article 1, § 12 of the Louisiana Constitution guaranteeing the right to due process, including the right to a fair trial in a fair tribunal. The judgment below forces appellants to appear and participate in a regulatory adjudicative proceeding with none of the due process rights afforded ratepayers in other regulatory fora.
Article 5, § 16(B) of the Louisiana Constitution provides that district courts shall have appellate jurisdiction “as provided by law.” Plaintiffs rely on Section 3-130(7) of the Charter, which provides:
The orders of the Council shall be enforced by the imposition of such reasonable penalties as the Council may provide, and any party in interest may appeal from orders of the Council to the Civil District Court for the Parish of Orleans by filing suit against the Council within thirty (30) days from the date of the order of the Council, and not thereafter.
Accepting plaintiffs’ argument that there is a right to judicial review of regulatory orders, this Court is faced with essentially the same issue of prematurity as that with which we dealt in the 2000 Lowenburg suit. Simply stated, the case is still in the same basic posture we discussed in May of 2000. The council has not yet been able fully to exercise its right to make an initial interpretation of its resolutions and ordinances with respect to the utility rates in question. The same constraints militating against piecemeal litigation and appeal in the 2000 case are evident in this case.
We agree with plaintiffs that the Charter and Constitution provide for judicial review of certain legislative rulings *810 made by the Council; however, a final ruling has not yet been made and we find that in the interest of justice to all the Imparties and judicial economy, procedural matters such as those presented in the instant appeal should be dealt with as part of a final appeal on a complete record. Such a record was not before the district court nor is it before us. The district court properly rejected plaintiffs’ attempt to circumvent this Court’s ruling in May of 2000 and required plaintiffs to exhaust their legislative remedies prior to applying for review by the courts.
Plaintiffs seek to characterize the Council’s process as judicial, citing cases arising from administrative agencies for the proposition that courts must consider the underlying nature of the administrative proceedings to determine whether the power being exercised by the agency is legislative or judicial.
A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making new rules to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative and not judicial in kind.
Prentiss[Prentis] v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67[, 53 L.Ed. 150] (1908). See also, Colorado Interstate Gas Co. v. FPC, 324 U.S. 581, 65 S.Ct. 829[, 89 L.Ed. 1206] (1945).
The Supreme Court then noted that the Louisiana court’s review of the Council’s actions was a judicial act, that is, not the making of a rule for the future but the declaration of NOPSI’s rights vis-a-vis the Council on present or past facts and under laws supposed already to exist. Since the court found that the state court review is not an extension of the legislative process, NOPSI’s pre-emption claim was ripe for federal review when the Council’s order was entered. New Orleans Public Service, Inc. v. The Council of the City of New Orleans, 491 U.S. at 372, 109 S.Ct. at 2520. Furthermore, the high court noted that challenges to legislative action are premature prior to passage of the final legislative act. Id.
Applying this logic, while the district court’s review of Council action is undoubtedly judicial in nature, the Council action itself is clearly legislative. While the proceedings through which the Council establishes utility rates have similarities to judicial proceedings, and are referred to informally as “rate cases”, they remain essentially legislative. Indeed, the separation between the concepts of legislative and judicial actions is so significant that the United States Supreme Court has held that even a United States Senate impeachment “trial”, presided over by the Chief Justice of the Supreme Court is not in the nature of a judicial trial with its attendant constitutional and procedural requirements. Nixon v. United States, 506 U.S. 224, 229, 113 S.Ct. 732, 736, 122 L.Ed.2d 1 (1993). We conclude similarly that the Council’s rate-making function is legislative and not judicial in nature.
We look also to the nature of the Council itself and its derived powers and likewise conclude that the proceedings in question are legislative. The Council derives its power from the Charter, and the Article III, § 3-101 of the Charter clearly defines those powers as the City’s legislative powers. In Article IV, § 4-101 the Charter vests all administrative and executive powers in the Executive Branch. The Louisiana Constitution vests judicial powers in the Louisiana Supreme Court, courts of *811 appeal, district courts, and other courts authorized therein. La. Const. Art. 5, § 1. Branches of government do not derive their powers from the nature of the relief sought before them. The fact that the Council engages in hearings and enacts orders does not make the Council a judicial body.
1 ^Plaintiffs alternatively seek to characterize the Council as an agency and to apply to it rules of construction relating to agencies. However, this argument has a faulty premise. Agencies are part of the executive branch, and may exercise quasi-executive, quasi-legislative and quasi-judicial functions. Thus, it becomes relevant to ascertain in various contexts the nature of the function being performed by the agency. The Council is a legislative body exercising legislative functions.
Plaintiffs rely on Matter of Rollins Environmental Services, Inc., 481 So.2d 113 (La.1985). However, Rollins was a suit brought under the Administrative Procedures Act, applicable to an agency of the Louisiana executive branch of government. The Louisiana Supreme Court recognized that § 49:951(2) of the Act specifically exempts the legislature or any branch, committee, or officer thereof, or of any political subdivision of the State, such as the City of New Orleans from the ambit of the Act. Rollins, supra, 481 So.2d at 118. Plaintiffs do not cite and our independent research has not found any decision supporting their claim of due process violation based on bias by a legislative body.
In Brinkhaus v. Senate of the State of Louisiana, 95-0647 pp. 4-7 (La.App. 1 Cir. 4/18/95), 655 So.2d 394, 396-98, two Louisiana senators sued in district court seeking declaratory judgment as to whether certain bills had been introduced properly. Jurisdiction in the trial court was not questioned; however, on appeal the court vacated the district court judgment for lack of subject matter jurisdiction:
La. Const. Art. II, §§ 1 and 2 divide the governmental powers of the State of Louisiana into three separate branches and further provide that “no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.”
[[Image here]]
Ill
The basis of Senator Nunez’s ruling is the application or interpretation of La. Const. Art. Ill, § 2(A)(2). This suit prays that “a declaratory judgment issue herein determining whether or not the proposed bills can be properly introduced.” Or, stated another way, this suit asks the courts for all intents and purposes to overrule the ruling of Senator Nunez, and we must assume if Senator Nunez’s ruling had been appealed to the Senate and sustained, we would be asked to overrule the Senate.
The ruling of Senator Nunez which is the basis of the “controversy” and the resolution thereof is a matter which properly belongs within the legislative branch of the government, and in this case within the Senate. Though this suit is couched in terms of interpreting a particular constitutional provision, the purpose of the suit is to correct an alleged erroneous procedural ruling of the President of the Senate. The legislative branch has the constitutional authority to adopt rules for the operation of each house of the legislature. The Senate has adopted rules of procedure including a means of appealing adverse rulings. For the judicial branch to entertain such a suit, the judicial branch would be exercising a power belonging to the legislative branch of state government, and *812 this we cannot and will not do. La. Const. Art. II, § 2.
* * *
In oral argument defendants-appellants argue that the courts undertook to interpret the constitution and advise the legislative branch in Jones v. Board of Ethics for Elected Officials, 605 So.2d 1064 (La.1992) and Henry v. Edwards, 346 So.2d 153 (La.1977). In each of these cases, the legislation at issue had already been enacted and w as then being challenged on constitutional grounds. In Jones the issue was the constitutionality of an act of the legislature based on whether an amendment was germane, whereas in Henry the issue was the constitutionality of gubernatorial veto power vis a vis substantive language in the general appropriations bill.
_biv
If we entertain such litigation as presently before us, the judicial branch will find itself involved in the daily operations of the legislative branch settling “controversies” between the presiding officers of either house and the members thereof as well as controversies between legislators themselves. We would end up as a “super” senate or a “super” house of representatives, and the judicial branch would be in violation of Art.. Ill, §§ 2 and 7(A) of the Louisiana Constitution. We are convinced that under the Louisiana Constitution this matter properly belongs in the legislative branch of government. [Emphasis added.]
The Council is in a similar position to the state legislature with respect to plaintiffs’ claims in the instant case. It has the exclusive power to establish its procedures, and we find no evidence in the record that the procedures it has established with respect to its consideration of plaintiffs’ request for rescission of the 1991 settlement agreement stand in violation of any constitutional or general legal provision.
Plaintiffs claim that the Council proceedings fail to provide for their judicial due process rights. However, the courts have recognized throughout the last century that legislative and judicial due process may require varying procedures. For example, an individual has limited constitutional rights to be heard when a legislative body considers issues of general public application. See, Bi-Metallic Investment Company v. State Board of Equalization, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915); E & E Hauling, Inc. v. Forest Preserve District Of DuPage County, 613 F.2d 675, 682 (7 Cir.1980); Dean v. Guste, 414 So.2d 862, 864 (La.App. 4 Cir.1982). Of, course, whether the proceeding is deemed administrative, legislative or judicial, it is clear that in the instant case the proceeding is incomplete, and a final, reviewable order, judgment, resolution or decree has not been entered.
|1fiThe City Council is proceeding in a deliberate manner to consider the plaintiffs’ attack on the settlement agreement negotiated and signed by plaintiffs and Mr. Groesch in 1991. During, the course of the Council proceedings, the orders at issue in this appeal, and, doubtless other orders, have been and will be issued. Neither the district court nor this Court will countenance the piecemeal appeal of each order of the City Council. Such a procedure would be contrary to the specific opinion of this court in the 2000 Lowenburg case and would violate the basic principle of judicial economy.
Plaintiffs argue that the Council and its advisors cannot be fair and impartial because they are bound by the provi *813 sions of the 1991 settlement agreement to uphold the agreement against the plaintiffs’ present attack. We find nothing in the record to support such a finding. For this Court to determine that another branch of government has pre-determined a legislative matter and is not in a position to consider fairly the issues presented to it by plaintiffs requires credible evidence. Plaintiffs have not supplied such evidence. To the contrary, the record shows that the Council has conducted and will continue to conduct hearings on the issues plaintiffs raised. The Council has not indicated in any way that it will not consider plaintiffs’ arguments concerning the effect, vel non, of the 1922 resolution on the 1991 settlement agreement. Nor is there any evidence that the Council has interpreted the 1991 agreement as prohibiting it from consideration of the issues raised by plaintiffs and seeking the Council’s legislative action to rescind the 1991 agreement. Furthermore, the Council has set a discovery schedule and evidentiary hearing in order that all the facts relevant to its ultimate legislative determination will be brought forth. These are not the actions of a body that has pre-determined |1fithe outcome of its procedure. On the facts of record we cannot find any evidence prejudice against plaintiffs on the part of the Council.
These assignments of error are without merit.
THIRD ASSIGNMENT OF ERROR: The judgment condones the City Council’s unlawful attempt to usurp power reserved to the courts to regulate the practice of law in this State.
The Louisiana Supreme Court has exclusive and plenary power to define and regulate all facets of the practice of law, including the admission of attorneys to the bar. The sources of this power are the Supreme Court’s inherent power emanating from the constitutional separation of powers, the traditional inherent and essential function of attorneys as officers of the courts and the Supreme Court’s exclusive original jurisdiction of attorney disciplinary proceedings. Succession of Wallace, 574 So.2d 348, 350 (La.1991). See also, Bester v. Supreme Court Committee on Bar Admissions, 2000-1360 (La.2/21/01), 779 So.2d 715.
Neither the district court nor this Court is the proper forum in which to raise plaintiffs’ complaints concerning Sullivan and Worcester and its member attorneys.
This Court, therefore, lacks jurisdiction to consider this assignment of error.
CONCLUSION AND DECREE
For the foregoing reasons, we affirm the judgment of the trial court and assess the costs of this appeal against the appellants. Because of our disposition of the main appeal, ENO’s answer to the appeal is dismissed as moot.

AFFIRMED.

. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

. In the Gulf States case, the Louisiana Supreme Court upheld action by the Commission reducing a similar imprudence disallow-anee because its consultants had determined the reduction was necessary to allow the utility to remain financially viable. The court found this action to have been reasonable and *807 neither capricious nor arbitrary. Gulf States Utilities, 578 So.2d at 96-97.

. On September 5, 1991, the Council by Resolution (Lying over) No. R-91-157 (as amended) approved the terms of the settlement. The resolution was adopted on October 3, 1991 by unanimous vote of councilmen Bois-siere, Clarkson, Giarrusso, Singleton and Wilson, with Councilmen Jackson and Taylor absent. Messrs. Groesch and Lowenburg were present when the Council passed the resolution.

. Mr. Groesch was the attorney for the Alliance and CFSE and appeared individually on his own behalf.