| ALLIANCE FOR | * | NO. 2019-CA-0874 |

ALLIANCE FOR    *    NO. 2019-CA-0874
AFFORDABLE ENERGY,
DEEP SOUTH CENTER FOR    *
ENVIRONMENTAL JUSTICE,        COURT OF APPEAL
350 NEW ORLEANS AND    *
SIERRA CLUB        FOURTH CIRCUIT
   *
VERSUS        STATE OF LOUISIANA
   * * * * * * *
THE COUNCIL OF THE CITY
OF NEW ORLEANS

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-03471, DIVISION "I-14"
Honorable Piper D. Griffin, Judge
* * * * * *
**JAMES F. MCKAY III**
**CHIEF JUDGE**
* * * * * *

(Court composed of Chief Judge James F. McKay III, Judge Paula A. Brown, Judge Dale N. Atkins)


MONIQUE HARDEN
DEEP SOUTH CENTER FOR ENVIRONMENTAL JUSTICE
9801 Lake Forest Blvd.
New Orleans, Louisiana 70127
     COUNSEL FOR PLAINTIFF/APPELLANT DEEP SOUTH
     ENVIRONMENTAL JUSTICE

SUSAN STEVENS MILLER
PRO HAC VICE 16-PHV-650
EARTHJUSTICE
1625 Massachusetts Avenue, N.W.
Suite 702
Washington, District of Columbia 20036
     COUNSEL FOR PLAINTIFFS/APPELLANTS ALLIANCE FOR
     AFFORDABLE ENERGY, 350 NEW ORLEANS AND SIERRA CLUB

BASILE J. UDDO
J.A. "JAY" BEATMANN, JR.
650 Poydras Street
Suite 2850
New Orleans, Louisiana 70130
-and-

CLINTON A. VINCE
PRESLEY R. REED
EMMA F. HAND
1900 K Street, N.W.
Washington, District of Columbia 20006
        COUNSEL FOR DEFENDANT/APPELLEE

W. RALEY ALFORD III
KATHRYN W. MUNSON
STANLEY, REUTER, ROSS, THORNTON, ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
-and-
TIMOTHY S. CRAGIN
HARRY BARTON
ENTERGY SERVICES, LLC
639 Loyola Avenue
New Orleans, Louisiana 70113
                COUNSEL FOR INTERVENOR/APPELLEE ENTERGY NEW
                ORLEANS, LLC

**AFFIRMED**

**APRIL 15, 2020**

Alliance for Affordable Energy, Deep South Center for Environmental

Justice, 350 New Orleans, and Sierra Club ("Appellants"), seek review of the

district court's June 14, 2019 judgment. The judgment denied Appellants' petition

for judicial review of the decision of the Council of the City of New Orleans

("Council"), adopting Resolution No. 18-65 to approve the Entergy New Orleans,

LLC ("ENO") application to build the New Orleans Power Station ("NOPS").

ENO has intervened in this action, requesting affirmation of the judgment. For the

reasons set forth below, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The following timeline of events is pertinent to this discussion:

June 20, 2016  ENO filed an application ("Original Application") with the Council, seeking approval to construct a 226 Megawatt ("MW") gas plant in New Orleans East at the site of the deactivated Michoud gas plant.

August 11, 2016  The Council issued Resolution No. 16-332, appointing Jeffrey S. Gulin ("Judge Gulin") as Hearing Officer. The resolution further provided that ENO, the Alliance for Affordable Energy, Posigen, and the Counci';'s Utility Advisors ("Advisors") were designated as parties to the proceedings.

1

November 3, 2016  The Council issued Resolution No. 16-506, directing ENO to:

> make a supplemental filing on or before November 18, 2016, which filing must include supporting testimony related to: (i) any and all analyses, data, sources, assumptions and results, including calculating and supporting workpapers in their native electronic format (e.g., Excel) related to the values presented therein for each of the four proposed Aurora modeling production runs requested by the Council's Advisors on September 19, 2016; (ii) groundwater withdrawal and subsidence at its Michoud site and surrounding area(s); (iii) air quality effects of the proposed NOPS; (iv) such other matters as ENO deems relevant to support its Application….

Resolution No. 16-506 further stated that "the Council intends to provide the residents of the City of New Orleans with an open and transparent process that will allow for multiple opportunities for the public to communicate its views to ENO and the Council as they relate to the construction of the proposed project…."

November 18, 2016  ENO filed supplemental testimony and analysis as requested by the Council.

January 6, 2017  Appellants intervened in the action and filed witness testimony addressing the economic, technical, environmental and social justice issues in connection with the proposed plant.

July 6, 2017  ENO filed a supplemental and amending application ("Supplemental Application"), proposing an alternative smaller 128 MW reciprocating internal combustion engine ("RICE") power station at the Michoud site.

August 10, 2017  The Council adopted Resolution No. 17-426, establishing a procedural schedule to examine ENO's supplemental application. This Resolution required ENO to conduct no less than five advertised public outreach meetings and for the Council Utilities Regulatory Office to conduct one public meeting in the Council's chambers.

October 16, 2017  Appellants filed the supplemental testimony of eight witnesses. The Council Utility Regulatory Office held a public hearing on ENO's Supplemental Application.

November 20, 2017  The Council's Advisors filed testimony of five witnesses.

November 30, 2017  ENO filed rebuttal testimony on the Council's request for additional analysis of alternatives.

December 15-21, 2017  Judge Gulin held an evidentiary hearing. All parties were represented, and witnesses were called to testify.

2

January 22, 2018  Judge Gulin certified the Administrative Record to the Council.

February 21, 2018  The Council's Utility, Cable, Telecommunications and Technology Committee ("UCTTC") held a public hearing on proposed Resolution No. 18-65, which was drafted by the Council's Advisors to approve the RICE power plant.  The UCTTC voted 4-1 to adopt the resolution.

March 8, 2018  The full Council held a public hearing on proposed Resolution No. 18-65.  The Council voted 6-1 to adopt the resolution, approving the RICE power plant.

April 9, 2018  Appellants filed a Petition for Rehearing with the Council. Appellants filed a Petition for Judicial Review in the Civil District Court, appealing the Council's adoption of Resolution No. 18-65.

April 18, 2018  Appellants filed a request for hearing on the Petition for Rehearing.

April 19, 2018  The Council summarily denied Appellants' Petition for Rehearing at their regular public meeting.

March 26, 2019  The district court heard oral argument on the matter.

June 14, 2019  Judgment was rendered, denying Appellants' Petition for Judicial Review.  Appellants' timely appeal followed.

## LAW AND ANALYSIS

On appeal, Appellants assert that the district court committed the following assignments of error:

1. Failed to apply the correct standard of review.

2. Failed to follow judicial precedent that prohibits dual roles in an adjudicative proceeding, and wrongly concluded that the Council proceeding was not adjudicative and that the Advisors' dual role did not violate due process.

3. Wrongly concluded that the Council's prior binding agreement with ENO to resolve all issues regarding a new gas plant to their mutual satisfaction did not prejudge the outcome of the Council proceeding because there was a public record of the agreement.

4. Failed to reverse the Council decision based on record evidence that the decision violated Resolution No. 16-506 requiring ENO to evaluate alternatives to its proposed gas plant, which ENO failed to perform.

3

5. Failed to reverse the Council decision based on record evidence that the decision was made in violation of a municipal ordinance that requires a certain elevated level for all new construction that was not met by ENO's proposed gas plant.

6. Failed to reverse the Council decision based on record evidence that the Council dismissed social justice issues in violation of Resolution No. 17-100, which requires the full vetting of social justice issues.

7. Failed to reverse the Council decision as arbitrary and capricious based on the Council's unexplained decision to abandon its own resolutions, Resolution Nos. 16-506 and 17-100, which were enacted by the Council to govern the ENO gas plant application proceeding.

8. Misinterpreted Council Regulation 1, which establishes the right to a hearing before the Council when requested by letter addressed to the Clerk of Council, and erroneously affirmed the Council's decision to ignore Plaintiffs' request for a hearing.

<u>Assignment of Error No. 1. Failure to apply the correct standard of review.</u>

In *Gordon v. Council of the City of New Orleans*, 2008-0929, p. 12 (La. 4/3/09), 9 So.3d 63, 72, the Supreme Court explained the standard of review in cases such as the one before us, as follows:

> Just as the [Louisiana Public Service Commission] has exclusive statewide regulatory and rate making powers over public utilities, the Council has exclusive regulatory and rate making authority over public utilities in New Orleans. This Court has stated that the proper standard of review over the Council's decisions in this regard is the arbitrary and capricious standard. *Alliance For Affordable Energy v. Council of City of New Orleans*, 96-0700 (La. 7/2/96), 677 So.2d 424, 434. Regarding the regulatory and rate making authority of the Council, we have held that "[r]ecognition of that authority requires that we limit our review to a determination of whether [the decision] is reasonable and refrain from merely substituting our judgment for that of the Council." *State ex rel. Guste, supra* at 294. As both the LPSC and the Council are regulators of public utilities and experts in their knowledge of that field, we apply the same standard of review to the Council as we do to the LPSC.

The Court in *Gordon* further stated:

> The LPSC is entitled to deference in its interpretation of its own rules and regulations, **though not in its interpretations of statutes and judicial decisions.** *Id.* (*citing Alma Plantation v. Louisiana*

4

> *Public Service Com'n*, 96-1423 (La. 1/14/97), 685 So.2d 107, 110).
> The LPSC's interpretation and application of its own orders deserve
> great weight because the LPSC is in the best position to apply them.
> *Id.* (*citing Dixie Elec. Membership Corp. v. Louisiana Public Service
> Com'n,* 441 So.2d 1208, 1211 (La. 1983)).

*Id.*

It is well established that "[t]he function of the reviewing court is not to reevaluate and re-weigh the evidence, or to substitute its judgment for that of the Commission." *Entergy Louisiana, LLC v. Louisiana Public Service Comm'n,* 2008-0284, p. 11 (La. 4/3/09), 990 So.2d 716, 723 (citing *Washington St. Tammany Electrical Coop., Inc. v. Louisiana Public Service Comm'n,* 1995-1932, p. 5 (La. 4/8/96), 671 So.2d 908, 912).

Here, Appellants acknowledge the arbitrary and capricious standard of review as set forth above. However, Appellants argue that the district court improperly applied that standard of review to the distinct *legal errors* (violations of constitutional due process, municipal ordinances and previous Council resolutions) alleged in their petition. In support of this position, Appellants rely on the holding in *Gordon,* that a utility regulator is not entitled to deference "in its interpretations of statutes and judicial decisions." *See Gordon,* 2008-0929, p. 12, 9 So.3d at 72.

It is clear from our review of the record that the district court applied the proper standards in reviewing the Council's decision. The judgment provides that "the action taken by the City Council in approving Resolution 18-65 did not violate due process and was not arbitrary and capricious in light of the evidence presented." Furthermore, the Reasons for Judgment demonstrate that the district court thoroughly and separately reviewed each of Appellants' allegations of legal errors and constitutional violations in finding that Appellants failed to show legal error on the part of the Council. We find no merit in this assignment of error.

5

<u>Assignment of Error No. 2.  Failure to find that the dual role of the Council's</u>
<u>Advisors violated Appellants' due process rights.</u>

Appellants assert that the Council's Advisors acted as both fact finders and advisors, which is prohibited in an adjudicative or quasi-judicial proceeding such as the present matter.  The district court acknowledged that the Council's Advisors acted in a dual role.  However, the court determined that the proceedings before the Council were legislative, not adjudicative; and thus, the dual role of the Advisors did not violate due process.  As the court recognized, this comingling of functions does not violate due process when the regulatory agency is acting in a legislative capacity (citing *Gulf States Util. Co. v. Louisiana Pub. Serv. Comm'n*, 578 So.2d 71 (La. 1991);  *Alliance for Affordable Energy, Inc. v. Council of City of New Orleans*, 578 So.2d 949 (La. App. 4 Cir. 1991), *vacated as moot on other grounds*, 588 So.2d 89 (La. 1991)).

Our jurisprudence has established that public utility ratemaking cases are essentially a legislative function.  In *Gulf States*, 578 So.2d at 79, the Supreme Court explained that:

> [R]atemaking is often particular in its application, in that the regulatory authority must determine what rates a specific utility may charge, based on factors which are unique to that utility.  However, the predominant weight of opinion views the ratemaking process as legislative, because it looks to the future and changes existing conditions by making a new rule that prescribes future patterns of conduct.

In *Lowenburg v. Council of the City of New Orleans*, 2003-0809, p. 11 (La. App. 4 Cir. 10/8/03), 859 So.2d 804, 810, this Court stated that "[w]hile the proceedings through which the Council establishes utility rates have similarities to judicial proceedings, and are referred to informally as 'rate cases,' they remain essentially legislative."

6

While the case before us is not a conventional ratemaking case, the district court found that ENO's application to construct the power plant is "akin" to ratemaking, "especially considering the fact that a major part of the application deals with a rate increase." We find no error in this determination. The Council proceedings clearly involved aspects of public utility ratemaking. It is undisputed that the construction costs for NOPS were to be recovered from ENO customers in future rate adjustments. Page 188 of Resolution No. 18-65 specifically provides that the cost recovery:

> shall be evaluated during the Council's consideration of the Combined Rate Case to be filed in 2018, and cost recovery shall be accommodated through a two-step rate adjustment as recommended by the Advisors. After the Council's complete vetting of the revenue requirement impacts of the NOPS project relative to total ENO operations in the Combined Rate Case, the Council will decide the timing of any step rate adjustments to reflect NOPS cost recovery that may be appropriate to correlate with NOPS date of commercial operation.

In *Gulf States*, a ratemaking case before the LPSC, the Supreme Court found no violation of due process where the Commission's staff members took an adversarial stance in the hearings and then advised the Commission regarding its decision. As the Court explained, "[t]he Commission is statutorily permitted to retain special counsel, engineers, consultants, etc. to assist its economics and rate analysis division in 'evaluating, reviewing, and representing the commission in matters affecting services and rates charged by public utilities to Louisiana consumers or the judicial review thereof.' LSA–R.S. 45:1163.3." *Gulf States*, 578 So.2d at 82.

Similarly, in *Alliance*, a utility rate proceeding before the Council, the utility company argued that it was denied due process because the Council used its legal and technical staff during both the evidentiary and the decisional phases of the

7

hearing process. The Court rejected the argument, reiterating that "state and federal law do not require a separation of functions in legislative or rulemaking proceedings." *Alliance,* 578 So.2d at 969.

Considering the record, and the above cited jurisprudence, we find, as did the district court, that the Council proceedings were legislative in nature and that the dual role of the Advisors did not violate Appellants' due process rights. This assignment of error is without merit.

Assignment of Error No. 3:  Failure to find that the Council's prior binding agreement with ENO did not prejudge the outcome of the Council proceeding.

Appellants' petition alleges that "[t]he Advisors' pre-determined position was the continuation of a prior agreement that they negotiated with Entergy outside of the Council's adjudication proceeding on the Entergy gas plant application." Regarding that prior agreement, the record reflects that, in August 2015, following negotiations before the Federal Entergy Regulatory Commission ("FERC"), ENO entered into a settlement agreement ("Settlement Agreement") with the Council to pursue the construction of a power plant. The Settlement Agreement provided, in pertinent part:

> ENO will use reasonable diligent efforts to pursue the development of at least 120 MW of new-build peaking generation capacity within the City of New Orleans. As part of this commitment, ENO will fully evaluate Michoud or Paterson, along with any other appropriate sites in the City of New Orleans, as the potential site for a combustion turbine ("CT") or other peaking unit to be owned by ENO, or of a third party with an agreed-to PPO to ENO. . . .

> ENO commits to use diligent efforts to have at least one future generation facility located in the City of New Orleans. . . .

Appellants argued before the district court that the Council violated their due process rights by failing to disclose the prior agreement during the course of the NOPS proceedings. The district court rejected that argument, finding that "it is

8

disingenuous to suggest that the Council withheld evidence of a settlement approval that was the subject of multiple public hearings." The court further noted that Appellants did not cite any legal authority to support the contention that the Council had a duty to disclose prior public documents that may be relevant to a subsequent proceeding.

Resolution No. 18-65 indicates that "public meetings were held by the … UCTTC and the full Council on September 30 and November 5, 2015, respectively, where the Settlement Agreement was considered. No party or member of the public opposed the Settlement Agreement." Clearly, the Settlement Agreement was made public.

In this assignment of error, Appellants appear to have abandoned their "duty to disclose" argument that they urged in the district court. They now argue that the district court neglected to review whether the Council was a neutral decision-maker. This argument is meritless.

In *Lowenburg*, the plaintiffs raised a similar argument, asserting that the Council and its Advisors could not be fair and impartial because they were bound by the provisions of a previous settlement. Rejecting that argument, this Court held:

> For this Court to determine that another branch of government has pre-determined a legislative matter and is not in a position to consider fairly the issues presented to it by plaintiffs requires credible evidence. Plaintiffs have not supplied such evidence. To the contrary, the record shows that the Council has conducted and will continue to conduct hearings on the issues plaintiffs raised. The Council has not indicated in any way that it will not consider plaintiffs' arguments concerning the effect, *vel non*, of the 1922 resolution on the 1991 settlement agreement. Nor is there any evidence that the Council has interpreted the 1991 agreement as prohibiting it from consideration of the issues raised by plaintiffs and seeking the Council's legislative action to rescind the 1991 agreement. Furthermore, the Council has set a discovery schedule and evidentiary

9

hearing in order that all the facts relevant to its ultimate legislative determination will be brought forth. These are not the actions of a body that has pre-determined the outcome of its procedure. On the facts of record we cannot find any evidence prejudice against plaintiffs on the part of the Council.

*Lowenburg*, 2003-0809, pp. 15-16, 859 So.2d at 813.

In the present case, the district court expressly determined that the Settlement Agreement "did not pre-approve Entergy's application for a power plant; it merely directed Entergy to explore the feasibility of a new power plant and to prepare a proposal for review by the Council." Moreover, the record reflects that, after the Settlement Agreement, ENO filed a new application on June 20, 2016. On November 3, 2016, the Council issued Resolution No. 16-506, directing ENO to supplement the record with supporting testimony on the project. ENO complied. On July 6, 2017, ENO filed its Supplemental Application, proposing a smaller power station, *i.e.*, the RICE alternative. The Council held public hearings, considered witness testimony presented by Appellants and the Advisors, and ultimately approved ENO's alternative proposal.

Appellants have failed to present any credible evidence to show that the Council's decision was pre-determined. Accordingly, we find that the district court properly rejected Appellants' due process claim.

Assignment of Error No. 4: Failure to reverse the Council decision based on record evidence that the decision violated Resolution No. R-16-506 requiring ENO to evaluate alternatives to its proposed gas plant, which ENO failed to perform.

Appellants argue that the Council failed to study and analyze alternative energy options. Specifically, they assert that the Council failed to consider the feasibility of upgrades to ENO's transmission lines, which Appellants contend was a lower-cost alternative. The record does not support this assertion. Rather, as comprehensively documented in Resolution No. 16-506, it is evident that the

10

Council considered a substantial amount of evidence on the pros and cons of transmission upgrades as well as other alternatives proposed by Appellants. After considering the evidence and testimony presented by all the parties, the Council approved the RICE alternative.

In its review of the record, the district court determined that, on the evidence presented, "the Council did not act arbitrarily and capriciously in regards to the consideration of reasonable alternatives." We agree. Based on our review of the record as a whole, we find that the decision of the Council was reasonably based on the factual evidence presented. This assignment of error is without merit.

Assignment of Error No. 5: Failure to find that the Council decision violated a municipal ordinance that requires a certain elevated level for all new construction that was not met by ENO's proposed gas plant.

Appellants assert that the Council's decision failed to comply with the Flood Damage Prevention Ordinance enacted in November 2017. New Orleans City Code § 78-81(a) establishes the legal requirement that all new construction "must, at a minimum, be elevated to one foot above the BFE [base flood elevation] . . ., or three feet above the highest adjacent curb (in the absence of curbing, three feet above the crown of the adjacent roadway), which is higher." Appellants maintain that the Advisors did not consider this ordinance in their recommendation to the Council.

First, there is no evidence in the record that the Advisors failed to consider New Orleans City Code § 78-81. Second, the record does not demonstrate that the ordinance has been violated.

As stated in Resolution No. 18-65,

> [T]he Council finds that that the evidence indicates that significant mitigation of the potential for flooding at the Michoud site has occurred, in particular the HSDRRS [Hurricane and Storm

11

Damage Risk Reduction System] and the raising of the Top of Concrete level above both the FEMA guidance and level of flooding seen during Katrina, and the Council finds the CPRA 2017 Master Plan prediction of no flooding at the site under the worst-case scenario to be persuasive.

In rendering its opinion regarding flood elevations, the Council relied on ENO's calculations that the Top of the Concrete elevation in its design plan exceeds FEMA guidelines for the Michoud site in that it is 2.5 feet higher than the FEMA advisors' recommendations. In addition, the Advisors determined "the appropriate Top of the Concrete level to be 3.5 feet above sea level, which is 2.5 feet higher than the FEMA Advisory recommendation and one foot higher than the observed Hurricane Katrina flooding."

The district court concluded that "the evidence presented confirms that the Council seriously considered all important issues related to the construction of the proposed plant." The court further noted that:

> [T]he construction of the plant, though approved in part by Resolution 18-65, is still conditioned on ENO's compliance with all applicable laws and regulations. It was reasonable for the Council to conclude that flood risks will be mitigated, and therefore the Court finds that he Council did not act arbitrarily and capriciously in regards to ensuring safe and reliable service pursuant to the aforementioned City Code Sections.

Upon review of the record, we do not find that the Council's decision to adopt Resolution No. 18-65 was in violation of the Flood Damage Prevention Ordinance.

Assignment of Error No. 6: Failure to find that the Council dismissed social justice issues in violation of Resolution No. 17- 100, which requires the full vetting of social justice issues.

In this assignment of error, Appellants argue that the Council dismissed the social justice issue that it previously ordered to be fully vetted in Resolution No. 17-100. Appellants suggest that the Council "turned away" from evaluating the

social justice issue of racially[1] disproportionate pollution burden and risk impacts of the gas plant.

The district court rejected Appellants' argument, finding that Resolution No. 18-65 "is replete with the Council's consideration of the social justice impacts of the proposed power plant." The court further noted that the resolution "contains at least 13 full pages of what the Council considered from both Petitioners, ENO, and the Council's Advisors regarding air emissions and social justice."

We agree with this finding. Based on our review of the record, we reject Appellants' conclusory argument that the Council failed to consider the social justice issues.

Resolution No. 18-65 demonstrates that the Council heard expert testimony on both sides of this issue and considered the expertise of the U.S. Environmental Protection Agency ("EPA") and the Louisiana Department of Environmental Quality ("LDEQ"), before finding that the environmental impact on the area would be significantly reduced compared to the previous Michoud plant. The Council further concluded, based on the evidence presented, that "there is no perpetuation of racial injustice where a new plant is sited on the location of a prior plant that had higher emissions than the new plant."[2] Finally, the record reflects that the Council considered the fact that there is, at a minimum, .75 miles between the plant and the closest residential neighborhood (ENO's expert found the distance to be one mile).

The Council conditioned the approval of the plant "upon ENO demonstrating compliance with all EPA and LDEQ regulations and requirements."

---

[1] Appellants argued that the location of the plant disproportionately affects the predominately poor and/or African-American and Vietnamese population in the area.

[2] Here, the Council relied on *North Baton Rouge Environmental Association v. Louisiana Department of Environmental Quality*, 2000-1878 (La. App. 1 Cir. 11/14/01), 805 So. 2d 255.

In light of that constraint, the Council determined that "there is no potential for a disproportionate adverse impact on minority neighborhoods in New Orleans East." The Council also makes note of the "substantial economic benefits that the project will bring to New Orleans, from which the New Orleans East residents will benefit."

It is readily apparent from the record that the Council thoroughly considered all evidence presented on the social justice issue raised by the Appellants. This assignment of error is wholly without merit.

Assignment of Error No. 7: Failure to find that the Council decision was arbitrary and capricious based on the Council's unexplained decision to abandon its own resolutions, Resolution Nos. R-16-506 and R-17-100, which were enacted by the Council to govern the ENO gas plant application proceeding.

This assignment of error is repetitive. As stated above, the record does not support Appellants' argument that the Council abandoned its own resolutions. Consequently, we pretermit any further discussion on this issue.

Assignment of Error No. 8: Erroneously affirmed the Council's decision to ignore Appellants' request for a hearing.

After the Council adopted Resolution No. 18-65 on March 8, 2018, Appellants filed a petition for rehearing on April 9, 2018. The petition did not include a request for a hearing. The Council's agenda, published on April 18, 2018, for the Council's regular meeting on April 19, 2018, included Appellants' petition for a rehearing. Notice of the agenda was posted on the Council's website. On the afternoon of April 18, 2018, Appellants filed a written request for a hearing. The Council summarily denied the petition for a rehearing at the April 19, 2018 meeting.

Appellants argued before the district court that the Council's actions violated Regulations 1 and 2 of the Rules and Regulations of the Council. Regulation 1

14

provides that any person is entitled to a reasonable hearing on any motion. It further provides that "[p]ersons desiring such a hearing must request same in writing from the Clerk of the Council in sufficient time to permit the notice required by Regulation Number 2." Regulation 2 states that "[b]efore a hearing is held, all interested parties, including proponents, opponents, the Mayor or the Chief Administrative Officer, and members of the Council shall be notified by the Clerk of Council at least twenty-four (24) hours prior to the hearing."

The Council argued at trial that Appellants did not timely submit their request for hearing twenty-four hours prior to the Council's publication of its meeting agenda. The district court agreed, finding that Appellants' request for a hearing was untimely. Specifically, the court found that Appellants "did not request a hearing on their motion with sufficient time for the Clerk of Council to provide notice to all interested parties. The request for hearing was not filed until 10 days after the motion for rehearing, and less than twenty-four hours before the Council's meeting on April 19, 2018." The Council also relied on New Orleans City Code, Section 158-485, which provides that the issue whether the Council grants a rehearing on utility regulatory matters is within the Council's discretion.

The record demonstrates that Appellants' request for a hearing was untimely. Clearly, the request made on the afternoon before the Council meeting did not comply with Regulations 1 and 2. Moreover, Appellants had notice (and an opportunity to be heard) that their petition for rehearing was on the Council's agenda for April 19, 2018. The district court correctly determined that Appellants' request was untimely. This assignment of error is without merit.

15

**CONCLUSION**

On the evidence presented, we find that Appellants failed to carry their burden of showing that the Council's decision to adopt Resolution No. 18-65 was arbitrary and capricious. In addition, for the reasons expressed above, we find that the district court applied the correct standard in reviewing the legal errors raised by Appellants to conclude that the Council did not violate Appellants' due process rights. Accordingly, we affirm the June 14, 2019 judgment.

**AFFIRMED**